Our next case is 5090579, People v. Forbes. For the appellant, we have Richard Huzzad, and for the appellee we have Robert Forbes. Just wait for a second, Judge Spomer will be right back. All right, Mr. Huzzad, when you are ready, sir, you may present your argument. May it please the Court, Counsel, I'm Assistant Attorney General Richard Huzzad, Counsel for the people of the State of Illinois on the relationship of the Director of the Central Management Services, and I urge the Court to reverse the Circuit Court's dismissal of this action on the ground that the Circuit Court lacks subject matter jurisdiction over it. The issue in this case arises from a claim relating to workers' compensation benefit checks that were made pursuant to an award in favor of Mrs. Gibson of permanent total disability benefits for life. She died many years after the back injury when she was working for the State Department of Human Services, and several years after that award was entered, but the State mistakenly continued to send checks. They were not sent back. She obviously did not endorse them. Somebody else negotiated them over the endorsement of her signature, and this suit was then brought upon discovery of her death to recover the six months of payments made. Who signed under her name since you brought it up? Was that ever brought out at all? Because I looked at it and I couldn't tell because of the way it was signed. We don't know for sure. Discovery never proceeded because the case was dismissed at the pleading stage for lack of subject matter jurisdiction. At this point, you know, we're trying to pursue the merits, and in the course of discovery of this Court, remand the case because, as we submit, the Circuit Court does have jurisdiction to adjudicate the merits. Who signed them? Who got the money? The Circuit Court will get to the bottom of that and decide under principles of common law, unjust enrichment and restitution or conversion, who's responsible to pay how much, and the defendants in this case can assert whatever defenses to the merits they want to assert by way of an answer. At this point, however, they said that the Circuit Court lacks even subject matter jurisdiction to adjudicate the merits of that restitution or unjust enrichment claim on the basis that involves an issue of an overpayment of workers' compensation benefits. And citing the Scott Wetzel Services case, it was mentioned in the defendant's motion, the Circuit Court said, yes, I don't have jurisdiction to decide the issue of an overpayment of workers' compensation benefits. And we submit that that holding is plainly wrong. It's directly contradicted by controlling authority from the Illinois Supreme Court and the Scott Wetzel Services case itself, as well as the Karastamatis case, which we've also cited, that's a decision by the Appellate Court but by the Workers' Compensation Commission Division. All of those cases said very emphatically and very clearly that although the Workers' Compensation Commission has exclusive statutory jurisdiction to determine whether a claimant is entitled to workers' compensation benefits, and if so, what the amount of those benefits are, that when it has fulfilled that role, its job has come to an end. And any action to recover an overpayment of benefits under benefits that were mistakenly made pursuant to a commission award is part of the Circuit Court's traditional common law jurisdiction over common law claims for unjust enrichment, restitution, and the like. The court in the Illinois Graphics case out of the Supreme Court made clear that there is no provision in the Workers' Compensation Act that gives the Industrial Commission, formerly the Industrial Commission, now the Workers' Compensation Commission, any authority to adjudicate whether there has been an overpayment or the amount of such overpayment or who should pay it back. Section 19G of the statute, the court made clear in Illinois Graphics, gives the Circuit Court the authority to adjudicate issues relating to the collection of benefits. Well, how would you know if it was an overpayment if you can't tell them it's an overpayment? Who has to adjudicate overpayment? The Circuit Court does. So in other words, the Circuit, how would they know if the payment was adjudicated by the Account Court? I'm sorry, I didn't hear the end of the question. How could they know who adjudicates the payment, the initial payment? The Circuit Court adjudicates that matter like any other factual question. No, no, let's back up. Who adjudicates the payment to begin with? You mean the amount of the benefits? Yes. Oh, I'm sorry, I misunderstood. The Industrial Commission must adjudicate what benefits are owed. That's a monthly payment. Oh, yes, I already said a total. The award says approximately, I think, $360 per week, and the Department of Central Management Services, and I'm not exactly sure why they do this, they send out monthly payments that are equal to the corresponding number of weeks pursuant to the award. So in this case, the Commission fulfilled its responsibility, it entered an award for life, for the claimant's life for a certain amount of benefits. The right to receive those benefits pursuant to the award continues to exist. Those benefits continue to accrue every month that she was alive, and the award was unambiguous. So that's for natural life, not… Not afterlife. No, no, but not a specific forecast of life. No, that's not some insurance actuarial estimate. We actuarially assume you're going to live 30 more years, so you get 30 years. Right. This is strictly pursuant to Section 8 of the statute. So it didn't, like, say 107 months. No, no, and one of the cases cited by the defendants in their brief, in fact, makes an inapposite reference to a situation in which that was the nature of the award. There's a specified period of time. The beneficiary of that award died before those payments were made, and then the remaining payments pursuant to the award went to the statutory heirs. But in this case, the award is unambiguous. It says so much money per week for life. Let me ask you this about – I agree that – I believe Illinois graphics says that the courts, not the commission, have jurisdiction over claims for restitution of overpayment. But I'm confused about your statement on page 9 of your brief where you say people agree that an action to recover an alleged overpayment is not yet right to be filed until the amount of those benefits has been determined. You're talking about the initial amount of the benefits, not the overpayment. Yes, correct. Yes. And that's the Scott Wetzel case, and I think that's why the Circuit Court might have been confused and misunderstood the law. Scott Wetzel, which, interestingly enough, was decided by a justice who then sat on the appellate division for the Workers' Compensation Commission and I believe may still do so. Justice Hoff said, absolutely, Illinois graphics holds that these are matters within the Circuit Court's jurisdiction, not the Industrial Commission's jurisdiction, to adjudicate, you know, right to restitution for an overpayment of workers' compensation benefits. But what was interesting about the Scott Wetzel case was the suit was brought before the workers' compensation award became final through administrative review, and the court said, until the dust has settled on this award, we can't be deciding whether there's been an overpayment or not. We don't know whether maybe any benefits were owed, or if so, how much. But once that's done, let's be clear that the action to recover an overpayment, if there is one, belongs in the Circuit Court, not in front of the Industrial Commission. Is there any Illinois case or otherwise that says when there has been payment pursuant to an order of the Workers' Compensation for life, someone dies and then continued payments are made in error? Is there anything… I mean, a case exactly on point where somebody continued to cash somebody else's checks after they died? I don't think so, and I think the lack of such cases probably suggests that this is really unusual. I mean, you have somebody, a situation where the award is emphatic, that the award is for life. The simplest explanation is often the best explanation. The checks keep coming, and the beneficiary doesn't endorse them. Somebody else endorses them, and we don't know who signed that yet or where the money went. But what we can tell you is it wasn't pursuant to this award because there was no right to receive those checks pursuant to this award. Can we back up a little? In fact, were they notified that the person passed away? Someone notified in the State? Well, the argument has been made that the State employee's retirement system… Was told. And that would be an issue going not to jurisdiction but to the merits because one of the elements for a restitution claim is that they not be voluntary payments made in response to a claim of right to that money. And the assertion was made in the defendant's papers and briefing, including in this court, both that the Assistant Attorney General representing the State in the Workers' Compensation Commission case was notified before any of those payments were made. And we categorically dispute that. That's not in the record. We think that that is a misrepresentation of fact. But that's something for the Circuit Court to resolve. Was there owed? But there was funds. Were there funds that were owed from the retirement? My submission is that the… Again, that's an issue for the Circuit Court to sort out as a factual matter on the merits of this case. Well, just answer the question. But the… Were there funds owed from retirement that was paid in funds? There were. And those were paid according to the probate records of which the court can take judicial notice. And I've attached those to my reply brief because the suggestion was made – I mean, the suggestion was made that they weren't paid. The suggestion was made that the temporary total disability benefits weren't paid. The award on the space shows that they weren't paid. The probate records show that the retirement benefits were paid. After having first staked out the position that any issue about an overpayment of workers' compensation benefits belongs before the Workers' Compensation Commission, which is categorically contradicted by clear case law, the defense has now, you know, come up with a flurry of all sorts of arguments as to why they should be able to keep this money. Counsel, at some point in time, you or your office was aware that the recipient passed away and that checks were sent out subsequent to her death. Yes. And that were tendered or cashed. Is that correct? Yes. Has you or your office turned this over to the – what's it – Madison County State Attorney's Office for investigation for forgery? And if not, why not? I didn't handle this case in the circuit court. I am privy to documents that are in the file that reflect an exchange of communications between our trial court counsel and the defendant's counsel. And I don't think it would be right for me to be telling this court what's in that communication. I personally don't know whether this was turned over to the Madison County State's Attorney for forgery. I have had discussions with other lawyers in our office about the elements of forgery, and I know that there has been some issue about that. There's also been a reporting issue relating to – I mean, don't you – wouldn't you have a duty as Assistant Attorney General or just as a citizen that if you thought the crime of forgery was committed to report it? I know that the appellate court hates this answer. I didn't handle this case in the circuit court, so to the extent that that type of criminal reference was made or a request for investigation was made, I don't know. I wish I could – and I could certainly ask the attorney who handled the matter in the circuit court. You don't think that your office – your office – you're representing the Attorney General's office here, correct? Yes, I am, Your Honor. I'm representing CMS, the people in the relation of CMS, as the party who took over the Department of Human Services. As a general proposition, if an Assistant Attorney General's office or the Assistant Attorney General believes that there's been a forgery, would you agree that they would have an obligation to report that to the appropriate authorities? I think generally there's a duty to advise the relevant authorities of something that comes across like clear evidence of a crime. Again, I – Well, you just told me that you were aware and your office was aware that checks were signed by a person that was already dead. Right, with her signature. No notation that somebody else signed. With her signature there. Right, yes. And that wouldn't at least make you curious enough to think that there was a possible forgery here that it should be further investigated? If I were aware of it at the time, I guarantee I would have followed – Well, you're aware of it now, right? I'm aware of it now, and I have to tell the court I have looked a little bit at the elements of forgery. I'm not saying that it's your responsibility to file charges, but it would seem like that somebody ought to be investigating it, should it not? Well, I concur with the court's view that it's incumbent upon somebody who's aware of that type of thing to warrant an investigation that that should be reported. Unless there's a good explanation. Well, in this case – What happened or whatever. And I don't know that the explanations given were good, but again, that would involve reference to materials outside the record that I don't feel comfortable going into. I have nothing to hide in that regard. It's sort of unfair on a canned record on appeal to start talking about things that are outside the record. I do want to say that what the State did immediately was two things. Once it became aware – and I say the attorney representing CMS or the Department of Human Services in the Workers' Compensation Commission case. They did two things immediately. They stopped the payments, and then they initiated the process of trying to recover the ones that were paid after Ms. Gibson's death that were endorsed over somebody else. But they don't feel a responsibility to report an investigation whether or not there's any criminal activity there? I don't – again, I don't know whether they felt that responsibility, whether they had communications with the local state's attorney, and if so, where those communications went. And again, if the court believes so – I mean, I'm certainly glad to have a conversation and report back to them. The court sensed that it was incumbent upon the Attorney General's Office to do so and to find out whether they in fact did so. Am I correct that payments were made for six months after her death? Correct. And is it correct that you were not notified – the State was not notified within that six months that they were notified after the payments had been made? That's what the complaint alleges. Those facts must be taken as true. There's these, I think, spurious suggestions that the submission of a claim for death benefits from the state employee's retirement system was tantamount to notifying CMS or the Department of Human Services or the attorney representing them in the Workers' Compensation Commission case that she had died. Again, that all goes to the merits of the case, not the jurisdictional issues. So from our view, the case law is very clear on this. The circuit court just got it wrong when thinking that if somebody whispered workers' compensation benefits and that had some relationship to an overpayment claim, that that was within the exclusive jurisdiction of the commission. It's sort of like sometimes you get a court that hears that there's been a bankruptcy filing, and immediately they think automatic stay, and they stop doing anything, even though sometimes the stay doesn't apply. I think the court, sort of in a knee-jerk reaction, backed off and said, well, I can't touch this because it involves some connection to a workers' compensation case. But the cases are emphatically clear that the circuit court was wrong in that respect. A circuit court, even to enforce a benefit award under Section 19G of the Act, has to consult the award. It has to see what payments must have been made, and then it has to compare that with the payments that were made. This is the mirror side of that issue. Again, it's the circuit court's job to look at the award, if any interpretation is necessary, to engage in that interpretation, although in this case I think the award is manifestly unambiguous and clear, and then to compare that with the payments that were made to determine whether there was an underpayment or an overpayment. Because Section 8H doesn't apply. That's a claim for payments that were due but were not paid to the employer. Correct. Yes, that has to do with an approval issue. We responded to the letter that was submitted attached to the defendant's motion to dismiss. We don't dispute the authenticity of the letter. We absolutely dispute the legal conclusions in there. And of course, on a motion to dismiss for lack of subject matter jurisdiction, there was no occasion or need to dispute the additional factual assertions, which we vehemently dispute, to the extent that they were treated as admissions by not denying. Many of them are contradictory. I mean, the arguments are made that these checks were endorsed pursuant to the authority of the administrator of Ms. Gibson's estate, but that the administrator in the estate had nothing to do with the checks because they were properly payable to the children instead. I don't know which of those arguments we're supposed to take at face value because they're inconsistent. But really, the point we're trying to make is they are beside them. To the extent they have any credence at all or any factual validity, that's something for the circuit court to get to sort out as a factual matter like it sorts out the facts in any case over which it exercises jurisdiction. And in this case, it simply does. Was there a lump sum payment to begin with, like a starting lump for back payments that had not been made until the case was settled as to so much per month? I don't know when it was made as a lump sum. I do know that the award indicates that temporary total disability payments. TTD, yeah. TTD had accrued for, and the award specifies the period of time for which they had accrued. And it had been paid. And it specifies how many weeks at what rate. And then it specifies an amount that was paid. And those two correspond perfectly. So the inference I draw is that whether it was a lump sum or it was multiple payments plus a lump sum, all of that was paid. And to the extent that there's a claim that more was owed under the award than was paid, then certainly that's something the circuit court can resolve. To the extent, alternatively, there's a claim that something was owed not under the award but separately under the act, payable to the estate or payable to the children. That's a claim that was never filed. We don't think that that claim would have any legal or factual merit. But the defendants can't put us into the catch-22 of saying your claim doesn't ask the court to resolve any entitlement to workers' compensation benefits. But outside the award, we may have a claim that may have merit, that we may file someday, that would invoke a ground for additional recovery under the act. And if we never file it, too bad. We're holding the permission card that we'll never put down to let you go forward with your case. That's a catch-22 that just doesn't make sense. Thank you, counsel. You'll have an opportunity for rebuttal. Thank you. Mr. Forbes. Good morning, gentlemen. Counsel. I'm very troubled by the representations that were made in the argument, totally unsupported by the record and totally inconsistent with the facts of the record. So just by way of background, I'd like to explain how this developed. There was a workers' compensation claim made by my client who worked for the Department of Mental Health, State of Illinois. There was a permanent and total disability award that was entered. By agreement, the award also included a component of pension benefits, and there was TTD back pay that was still owed, and other elements of the award that were in the order. A year and a half after the order was entered, Ms. Gibson passed away. She had two children. The State of Illinois was notified of her death two separate times. The retirement department was notified. The Attorney General was notified. It's in the record. So to sit here and say that they were not notified is inaccurate and unsupported by the record. What was the date of that notice? Was the notification prior to the state's payments? Yes, and it's not alleged in the record otherwise. Look, I would ask the court to look at the complaint. The complaint does not allege that there was a mistake of payment. The word mistake is never used in the complaint. The first time the word mistake was used was in the appellate's brief. The complaint alleges the state was notified and continued to make payments, and then it alleges there was a duty to notify the Office of Central Management Services. That's what's here today. A person who was not a party to the case comes in afterwards and says they should have been notified, even though they weren't on the checks and they weren't a party to the case. And then they represent the word forging documents. The administrator of the state had the authority to endorse the checks and pay her two children for six months after she died. Where did that authority come from? It comes from the Probate Act. Where in the Probate Act? I don't know specifically. The administrator has the legal authority to enter into contracts on behalf of the stance of the shoes of the deceased. The IRS manual that I've cited specifically says that they don't take into account the death of the taxpayer because the administrator has the authority to endorse refund checks on behalf of the deceased. So these checks were endorsed by the administrator and paid to the children. The signature on there, because I couldn't read it. Well, it's the deceased's signature just to expedite the processing of the checks. No, no, no. Whose signature was on there? The payee on the check after notifying the state of the death of the deceased. The state continued to issue checks in the name of Nancy Gibson. I saw her name. Right. It's not very clear, but underneath there was somebody else's name. I couldn't think. Whose signature is that? Well, that was my signature because that was also on the check, in addition to the administrator, just to endorse the check and pay the children. Okay. Is that your signature underneath Gibson's? I believe it is. And I didn't see anybody else's signature on there. Was the administrator's signature on there? Well, they're not separate from Ms. Gibson, but there wasn't any forgery. Then I just thought you said that the administrator has the authority that's found in the Probate Act to endorse checks. And that's what happened here. She endorsed the decedent's name on the check. She endorsed the check on behalf of the decedent. There was no effort to try to misrepresent. Oh, okay. She put Nancy Gibson's name down there. Yes, exactly. Not her own. Not as the administrator or anything. Oh. And the state had already been notified. The complaint admits they were notified. They were aware of it. And after this is all said and done, the Central Management Service, this is not a part of the case, not based on the state saying we have a duty to notify you. And your signature is on there for what reason, counsel? I believe, was I paid on the check? I can't recall. You were paid the order of Nancy Gibson. CARA or something. CARA. Right. CARA of your address, I mean. Right. So I didn't have to endorse it, but I did anyway just to make sure there wasn't any problems in getting money to the kids. You know, it wasn't, when somebody was paying CARA just to make sure that there's not any problem with it, that's the way I handled it. Should the administrator have indicated that she's signing it on behalf of somebody, on behalf of a dead person? In what respect is it misrepresentative to do it the other way? It's representing that this person signed it. Right, which she had the authority to sign for you? No, it's representing that Nancy Gibson signed it, and she's deceased. I don't believe that it is inappropriate to do that, and if it is, the state can't complain because they were paying Nancy Gibson. Right. Can't come in and, I mean. It's, the purpose of the endorsement was not to in any way disguise something that we specifically notified the attorney in the case in the pension department of, Your Honor, we're simply trying to get the money to the people that were to be paid and not to cause any delay. I'm not questioning the intent. I'm questioning the validity, the legality of an administrator signing a deceased name without any indication other than the deceased signed it. You know, again, I think that's, I don't think that there's anything inappropriate with that. It was a person who was authorized to act on behalf of the administrator. It wasn't a misrepresentation to anyone. If the bank shouldn't have endorsed it, perhaps the bank shouldn't have negotiated it, perhaps it shouldn't. How are they supposed to know? How are they supposed to know? How is the bank supposed to know? Would it make a difference if it was signed on behalf of the administrator rather than Nancy Gibson? What difference would it make? Well, they probably want to make sure that the administrator was properly appointed, had a proper bond, all other kind of matters there, you know. Anyway. I'm sorry. We're going way off on the main issue here. Let me ask you a question. At the time of these six checks, was the deceased owed any back TTD? Yes. TTD is a grant. It's my position she was owed TTD. It's my position she was owed pension benefits. And it's my position that all those issues have to be resolved by the circuit court. And it's my position the circuit court does not have jurisdiction to decide those issues. That's the basic problem of the case, other than the party who is here today was not a party to this action. The question is not whether or not the industrial commission has jurisdiction to consider repayment of benefits. The question is whether or not the circuit court has jurisdiction to consider that. Counsel assumes that when I argue that the circuit court lacks jurisdiction, that I am arguing that the industrial commission necessarily does. That's not the case. Illinois law, which is actually more generous than a lot of other states, does not provide for any reimbursement of overpayment of benefits under the Warped Compact. And a lot of states are similar. It's not provided by the legislature. This is a statutory format. If the remedy doesn't exist in the act, it doesn't exist. It doesn't matter whether the state claims, the Department of State claims it should have been reimbursed or not. It has to be provided for by the act. It's not provided for by the act. In 1994, the Illinois Supreme Court carved out a limited exception to this lack of reimbursement. The exception the Illinois Supreme Court carved out does not exist in many other states. The exception was under limited circumstances. The circuit court has jurisdiction to consider a claim for repayment under very limited circumstances. The limited circumstances are not present here. Those circumstances are when there has been an award of benefits, TTV typically, which is later and the respondent makes payment pursuant to that award. And the award is later set aside by the industrial commission. Therefore, there is no industrial commission award for the circuit court to determine. There is no award. Under those very limited circumstances, the circuit court has subject matter jurisdiction. That's not what happened here. We have a final award. We have a disagreement over the amount of benefits that were paid or were owed. It's stated by counsel that the award on his face does not show that it was paid. It's not true. The award does not show that it was paid. It shows what is owed. The only way to determine what was paid is to have a factual determination by the circuit court of what benefits were owed and were paid. So in this year and a half after she got her permanent award, was there an action filed in the commission claiming additional benefits? We went a year and a half. What if we had gone four years? There was no action filed. It would be a counterclaim if the court finds there's jurisdiction in this case. You know, there's two children here. There's a question of who's representing whom at this point. There's all sorts of issues that aren't really relevant to this that play into this. The lady has passed away. This lawsuit is what is currently being addressed. Does the court have subject matter jurisdiction? Not does the industrial commission have jurisdiction. What the counsel fails to recognize is that there is clearly a scenario. The predominant scenario is you cannot seek reimbursement of overpayment of benefits. The Compact does provide for it, and counsel refuses to accept that. It assumes that if you can't go to the industrial commission, that you necessarily can go to the circuit court. If what counsel says is true, that I can go to the circuit court, any employee who's been receiving benefits can go to the circuit court and claim that the respondent, the employer, didn't pay them the benefits that he was owed under the act and ask the court to litigate that. There'd be all kinds of cases in the circuit court litigating, do I owe them benefits? Do they owe me benefits? Because this isn't a mistake of benefits payment case. It's not alleged. It doesn't exist. This says simply that we had a duty to notify the office of central management services after notifying, before the payments were made, the attorney general and the retirement department, because there was a retirement component, that we had a separate duty to notify this agency that is not on the checks, that we have no reason to be aware it should be notified, and in my opinion, it doesn't have to be notified. How many departments do we have to notify when someone passes away? In addition to the notification of the death, and this is relevant, I believe, we notified the attorney general that we were disputing that she had been paid all of the benefits she was owed, and we asked them to continue making payments, and that's what they did. There's an exhibit that's in the file at the trial level which wasn't objected to, has not been refuted, is not opposed, which we lay out that we notified the attorney general that the lady has passed away, that she was owed benefits, and they should continue to pay them. No one has disputed that. So to suggest that the record does not show that is inaccurate and a misrepresentation. The cases are clear on this. They've only even had cases of any type of restitution or ability to seek repayment since 1994. The statement by the attorney general that actions for restitution of an overpayment fall within the general jurisdiction of the circuit court is simply inaccurate, and it's directly indicated as being inaccurate by the Supreme Court's Illinois graphics, and I've cited that on page 10 of my brief where the Illinois Supreme Court says that the law does not hold that an employer can maintain a cause of action for recovery of all manner of compensation benefits. These decisions simply establish a cause of action for restitution where an employee receives a compensation of an amount as interest on an award and is later determined that the employee is unentitled to those amounts. The unentitled-to-amount determination was the cases it's talking about where the industrial commission set aside the award and determined that the employee was not entitled to that. Those are the limited circumstances under which a respondent or a party can apply to the circuit court to seek reimbursement benefits. So this broad statement that the circuit court has jurisdiction to hear any and all claims for reimbursement is inaccurate. What they're trying to do is have the courts create a legislative provision for the Work Compact that does not exist, an ability, a remedy, which does not exist. The legislature wants to give employers the right to seek repayment of benefits. Under these circumstances, it should and can and has the authority to enact legislation to do so, but the employer can't complain that I can't get my benefits under the Act, therefore I'm going to go to circuit court. If he can do that, then we can do that, and we should be able to go to circuit court and file lawsuits claiming we didn't receive all the benefits under the Work Compact. The statement by the counsel that the complaint does not allege that the notification was made until afterward is, again, inaccurate. I would ask the court to look at the complaint. The complaint in this case says we were notified and we continue to make payments. And the other point I would make is what is conceded by the Attorney General in this case is the notion that the circuit, at least is the notion that the circuit court cannot consider a workers' compensation claim matter, which involves a determination of an overpayment. If it has to make that determination, it lacks jurisdiction. It gives me that much. The counsel gives me that much. It tries to argue that this case falls within that exception because there is no requirement. It is not necessary for the circuit court to make a determination whether or not an overpayment has been made, and we dispute that. We don't have to dispute it because the Attorney General in his own language in his motion stated, quote, if this court determines that an overpayment exists, then the person who received the proceeds shall be liable. So what the Attorney General is saying is the question of overpayment is unresolved. That's what it said at the trial. Were these checks deposited or were they cashed? Were they deposited in the estate's account? They were deposited in the estate's account. Yes, they would have been deposited and paid to the children. No, where were they deposited? I don't care where they were paid to. In the estate's account. They were deposited in the estate's account. I believe so. I mean, I'm speaking from memory. I'm not sure. Or were they cashed for cash? They were cashed for cash. I read up through my escrow account, as I recall, and I don't recall whether I wrote the check. I probably think I wrote the checks to the children. That's what, yes. My memory is I wrote the checks to the children. When these checks were tendered to the bank, they were placed in your escrow account or were they placed in the estate's account? I believe they were placed in my escrow account, and I believe I wrote so I could write checks to the children, the two children. Because in my view, when a person dies and there's benefits that are owed, those benefits go to the children. That's what the statute says in my reading of it. So the administrator didn't deposit the checks then? The administrator didn't endorse the checks. The administrator signed Nancy Gibson's name on the back of the check. Yes, Your Honor. And gave it to you, and you deposited it in your own escrow account. I believe I did, yes. Okay. I mean, was it a separate escrow account just for the estate? No, it was my trust account that whenever I have client funds, I put in a trust account to make distribution. To me, that's the appropriate way to do it. I'm not trying to disguise anything. I'm trying to give the children their money. No one else is getting it but them. The statute says that I've told the Attorney General that the lady's died and continued her benefits. I've paid it to the children. I don't understand why there's any question that anything before it that suggested that anything before it. I'm not suggesting that. I'm just trying to figure out what procedure was followed in this case here. Right. The reason it wasn't shown in the inventories is because it's not an asset of the estate if it's payable to the children. And the suggestion by the counsel that all the pension benefits were paid as shown by the record is not factored. It shows what was paid, not what was owed. In my position, it was more owed than was paid, and I made that clear to the Attorney General. So the checks weren't made out to the children. They were made out to the decedent. Correct. They were owed to the children, made out to the decedent, in order to – In your opinion. Right, in my opinion. And just as a tax refund – And so the administrator – why would she even – well, never mind. In other words, my view is analogous to a deceased taxpayer. If a husband dies and a check is made out to him and the administrator endorses it because the wife is under the will or whatever, for whatever reason, legally the wife gets the money, does he have to send it back to the IRS? No, he doesn't. It says you can endorse it and pay the person who legally entitles the money. That's the children. She could sign a deed to sell the house, the real estate? Who, the administrator? Well, I mean, it would depend on the nature of the administration. Well, it depends on – the Probate Act says by order of court. You've got to get permission to do that. Yeah, there's nothing in the Probate Act that says, in my view, that says that we have to get permission in an unsupervised administration to endorse a check, which is by law payable directly to the only heirs of the estate. I didn't deem that as being something that was necessary to do. Secondly, the reason there isn't any forgery under any circumstances is a forgery would be if Nancy Gibson complained to somebody or her estate complained to somebody, paid, signed her check without her authorization. She didn't get the money. She was entitled to it. The estate knew it was paying Nancy Gibson, and it paid Nancy Gibson, and the money went to her estate or went to her heirs. They can't complain to anybody, get anything to mislead them. They were notified. Nobody forged anything with respect to the state of Illinois. Nobody forged anything, period. The money was paid by the state of Illinois after being notified of the death of Nancy Gibson and being notified of our position that the money should continue to pay. They continue to pay the money. It's undisputed by the Attorney General who represented the employee. Somebody forged Nancy Gibson's signature. She was dead. She couldn't sign it. Someone signed Nancy Gibson's. Forgery is an unauthorized – someone who signs without authority to sign. In my opinion, the person who signed had the authority to sign on behalf of the decedent. In my opinion, the administrator of the estate has authority to act on behalf of the decedent. In my opinion, the authority can sign contracts on behalf of the decedent, and a check is a contract. In my opinion, the legal authority of the state of Illinois gave the administrator the authority to accept payment made payable to the decedent. In my opinion, the state of Illinois, the law of the state of Illinois gave the administrator authority to make sure that the payment made to the decedent went to the individuals who were entitled to succeed Nancy Gibson, who was deceased, to succeed her interest in that check. In my opinion, that is not forgery. In my opinion, when we notify the state of Illinois ahead of time of the circumstances, that is not a mistake. That is not misrepresentative. That is not misleading. That is not inaccurate. That is nothing but being up front. When I notify two separate departments to make sure they know about it, to make sure they don't have any complaint, to make sure that there's no question of anybody trying to pull anything, when I notify the retirement department and the attorney general handling the estate, because there's two proponents, that's not forgery. That's not misleading. That's not inaccurate. There's nothing as far as – there's nothing underhanded. There's nothing but above board about that scenario. And it just bothers me that it's being suggested that if there's anything done here that is, in my view, is not above board and appropriate. If the state of Illinois has complained, admits, we knew she had passed away, we knew she was deceased, but you had a duty to notify an additional department other than the person you notified. To me, that is – that is what is, in my view, misrepresentative. Why in the world would we have to notify a department that is not on a check, that we don't know is involved in this case, an administrative agency which handles – I don't know why. But that's what's alleged here. Not that the state of Illinois, the person – not that her employer didn't know that she was deceased, not that the retirement department didn't know, not that the person who wrote the check didn't know. The Department of Social Management Services said we should have notified them. You had a duty. It does not even list that we got the money. It just says we had a duty to notify them. Thank you. Thank you, counsel. Revolt. Let me just start where counsel ended. This is obviously not a unique situation where permanent payments are ordered by the commission, somebody dies. Who's to be notified and how of the death to terminate the payments? The branch of the executive department that's responsible for administering those payments should be notified. And that is? Normally it would have been the Department of Human Services in this case due to a shuffling of the executive branch during the prior governor's administration. Department of Central Management Services took over the process as payor for administering. We don't dispute that if either of those entities had been notified of the death of the payee, that there would be an issue to be resolved about whether that notification was sufficient to avoid the mistake element for a restitution claim. That's not a jurisdictional issue. That's a merits issue, which I think really isn't properly before the court. But let me say this. Opposing counsel got up here and said he was troubled by misrepresentations that were made. That makes two of us. As an officer of the court, I have to say that I am flabbergasted. I have never seen such a shifting ground set of representations of law and fact that are unsupported by the record and that are groundless in an effort to try to avoid having to put back into the state's coffers money that it had no duty to pay and that they had no right to keep pursuant to this award. The representation was made here in open court and in the defendant's brief that the Attorney General, the Assistant Attorney General representing the state employer in this case in front of the Workers' Compensation Commission, was notified of the claimant's death before any of these six checks were made. So you say that's a question of fact. That's false.  I am really upset that these representations are being made to the court. Now, it's outside the record, but I will tell you this, that I have been through records, and I have talked to that Attorney General, and I've seen the emails go back and forth. And for this attorney to represent that we can see that that notification was made before these checks were made out is not only outside the record, it is beyond the pale. It is unacceptable for an officer of the court to make that type of misrepresentation. It's not for this court to decide. Did you have any dates on those letters? There was no letter. I thought there was two notifications. No, he went to SERS to get retirement benefits, which they paid, and they're not an agent for CMS or DHS. They have nothing to do with workers' compensation benefits. What about the attorney general? There was an affidavit sent to the claimant that has to be filled out every year saying, I'm still entitled to this. It came back either unreturned or with a notation deceased on it, at which point a call was made by the CMS representative to verify this complaint to Mr. Forbes. Let's move. I'm sorry, but I have to say this. We have a jurisdictional issue. Advocacy and emotions aside, let's deal with the jurisdictional part. The record doesn't admit that, and the basis for that in the record is simply a statement in Mr. Forbes' letter that says, after I spoke to the assistant AG, the benefits were terminated. Well, of course, that's true. Six months after the death and after six months of checks were made, the payments were terminated. But that's not before the checks were made. That's a flagrant distortion of those things. Likewise, the claim here that the administrator signed those checks, there is no evidence of that in the record, and I don't think the court should take it. I face value that representation. In fact, there's information that the administrator had no knowledge of these checks whatsoever. That's an issue that we need to get to the bottom of. But let's go back to the jurisdictional issues in this case, which is the theory that it turns upon whether there's some duty. The merits of our claim don't turn upon whether there was a duty or not. That's an allegation of the complaint that's probably surplusage. The common law action for restitution doesn't depend upon it. There's an argument that in Illinois you can't get restitution of benefits, overpayment of workers' compensation benefits, unless those are benefits that are paid before the commission's decision becomes final. There's no support for that in the law. And even if it were, that would be an issue going to the merits of the claim in this case that could be asserted in front of the circuit court if it has jurisdiction, which it certainly does. The notion that they can file a counterclaim, that there were more payments owed on the award than were paid, absolutely. Let them file that in front of the circuit court. And I believe they said, that's who should decide it. We'd be only too glad to have a factual determination as to whether there were any underpayment of temporary total disability payments, person wanted to be warned, or any other payment do want to be warned. That's what the circuit court decided. But we didn't get the chance to have those issues resolved, because the circuit court threw it out, hearing that there was an issue of overpayment of workers' compensation benefits. Thank you, counsel. We appreciate your argument. The court will take the matter under advisement and render its decision. The court will stand at recess until 9 a.m. tomorrow morning. Thank you. All rise. Thank you.